Opinion of the Court.
Southard J.
On the 19th of June 1817, Henry Tunison an¿ Josiah Briggs entered into a bond to the sheriff of Hunterdon, in the penalty of 95 dollars, conditioned, that ag said' Tunison was committed a prisoner to the gaol x of Ilunterdon upon a judgment and execution in favour ^a^l^as Cramer, for 95 dollars, debt, and 3 dollars, 5 costs, therefore if the said Tunison should keep within the bounds of the prison of said county, then the bond to be void, otherwise to remain in full force. ' Under the allegation that Tunison did not keep the limits, Cramer, on ¿jjg 13th of December 1817, obtained an assignment of this bond from the sheriff, and commenced this suit against Tunison and his surety, Briggs. The cause was tried on the 30th of January 1818, and at the trial the execution of the bond and of the assignment were admitted, and two witnesses proved that they had seen Tunison, at a store, two miles from the limits, about eight weeks before. The summons, in this case, was served on the 12th of January, at which time Tunison was upon the limits, and so continued until discharged under the insolvent laws on the 23d of the same month, a few days before the trial. After this testimony, a motion was made for a nonsuit on the ground, 1. That it had not been proved that Tunison was off the limits before the assignment of the bond. And 2. That *the suit was not sustainable, because he had returned within the limits *575 before tlie suit was brought. The motion being overruled; a verdict and judgment were rendered for 98 dollars and 5 cents, of debt, with the costs, being 3 dollars and 5 cents more than the penalty of the bond. And now here, the plaintiffs in certiorari rely, for the reversal of the judgment, as well on the overruling the motion for a non-suit, as on the fact that the verdict and judgment are illegal, because for too large a sum. Let us look at each of them.
1. The reason and nature of the thing, as well as the construction of the law, (sec. 100, Pat. 365) require that the prisoner should have broken the condition of his bond, before the sheriff has any right or authority to assign it; and an assignment made before such breach would be irregular. But this court has not sufficient evidence before it to shew that this reason is founded in fact. The bond was assigned on the 13th of December; the prisoner was seen off the limits about eight weeks before the 30th of January following ; not quite seven weeks after the assignment. The terms used “ about eight weeks” are very indefinite and I am not willing to say that in construing them, the court below erred.
2. The prisoner had voluntarily returned before action brought, and therefore, according to the decision in PIoward and Ditch v. Blackford and others, Peri. 777 ; the suit is not sustainable. The correctness of that decision will not here be questioned ; but there is certainly a manifest distinction between the cases. In the case cited, the prisoner “walking within the limits next and adjoining to the bounds of the gaol or prison, which wras terminated by an imaginary line, casually, accidentally, and by mistake, walked over and beyond the bounds of the said prison, a little wray, to wit, the distance of five feet and no more; and thereupon and immediately thereafter, and without any pursuit or retaking &c. and before the commencement of the action, voluntarily and of his own accord, instantly returned within the bounds of the said prison, and the custody of the sheriff,” &c. And the court adjudge that this was not such a walking out of the limits, as to forfeit the bond and authorise a recovery. But is this the case under consideration ? I think not. The walking out of *576 Tunison was not casual, but deliberate; not accidental, but by design ; not by mistake, but with knowledge and premeditation; not the short ^distance of five feet, but more than two miles. If this be not such an act as violates the intention of the law and the condition of the bond, I know of none that would. ■ If a man may deliberately go two miles, why not five? why not twenty? why not to the extreme end of the state? nay beyond it. If he may go to a store, why not transact any other business ? and where is the confinement to which he is subjected? The law is a dead letter and the marking out of the prison limits a farce. I can view this act of Tunison, in no other light than as a clear and intentional infraction of the law and breach of the condition of his bond; and I think the justice decided correctly, in overruling the motion for a nonsuit on this ground:
3. The plaintiff claims 100 dollars, and in his demand sets out, the execution of the bond, its penalty, condition and assignment, as the ground of his claim ; and demands “ the said sum of 100 dollars, the principal and interest on said bond,” &c. If by this, he intended to consider the penalty as a sum due, to which he was entitled, and on which interest could arise; he,is, I apprehend in an error: nor if it were so would the difficulty be removed. If it be a sum certain, which can bear interest, at what period must the interest commence ? Certainly not from the execution of the bond. The obligee can have no rights under it, until a breach of the condition; and if we calculate interest from the time proved, when the breach was made, it will not amount to the sum recovered. The amount of the execution on which the prisoner is confined, is the real object to be secured; and the law no doubt designed, that when the bond was forfeited, the principal, interest and costs on that'execution should be recovered by the creditor; hence it directed the penalty of the bond to be double the sum for which he was committed, {Pat. 368) and this bond is faulty in not having been taken in that sum. If it had been, no difficulty would have arisen on this point. The plaintiff might safely have had his verdict, as it now is, for the amount and interest. But as it was not taken in double the *577 sum for which Tmison was committed, but only in the sum itself, can more be recovered ? Can we go what Briggs, the security, has agreed to pay, and compel him to pay what he has not agreed to ? I think not. His case is not that of a bond for money, or the performance of a collateral act, where, in some instances, a recovery of interest has been allowed, even beyond *the penalty; (1 Eq. Ca. ab. 92. 2 Term Rep. 388) but it is a specific agreement that an act shall be done, under a specific penalty. Who then has a right to enlarge the penalty ? and say, you agreed that an act should be performed or you would pay ninety-five dollars, but you shall pay ninety-eight. Wo might as well make him pay nine hundred dollars, or any other sum. He may well tell us, “ it is not within my bond.” I think the verdict and judgment are for too much, and should be set aside.
Judgment reversed.